UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MARGARET BAKER,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>RICHARD AXTMAN, COLTON HOWARD, JEREMY HYLE-Trustee of the Kootenai Jail,<br><br>　　　　Defendants. | Case No. 2:25-cv-00136-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

### INTRODUCTION

This case stems from a traffic stop performed by tribal law enforcement officers on Margaret Baker, which resulted in her arrest and detention. Baker filed her case in Idaho state court and the Government removed it here. There are now four motions before the Court:

- Baker's Motion to Remand to State Court, Dkt. 7;
- The Government's Motion to Substitute, Dkt. 5;
- The Government's Motion to Dismiss, Dkt. 5; and
- Baker's Motion for Default Judgment, Dkt. 17.

MEMORANDUM DECISION AND ORDER - 1

For the reasons that follow, the Court grants the Government's two motions and denies Baker's motions.[1]

## BACKGROUND

*Facts*

Colton Howard and Richard Axtman—two Coeur d'Alene tribal law enforcement officers—were driving along a highway in Idaho when they passed a car driven by Baker traveling in the opposite direction. *Compl.*, Dkt. 1-2 at 5; *C. Baker Aff.* ¶ 2; *M. Baker Aff.* ¶ 1, Dkt. 1-16 at 1. The officers turned around, pulled Baker's car over, and told her that they stopped her because she was driving with a cracked windshield. *Compl.*, Dkt. 1-2 at 5; *M. Baker Aff.* ¶ 3, Dkt. 1-10; *C. Baker Aff.* ¶¶ 3, 5-7, Dkt. 1-16. When Howard asked Baker for her license, registration, and insurance, Baker responded by handing over "legal documentation" stating she "had no contract" with the state DMV and that she could not be forced into such a contract. *Compl.*, Dkt. 1-2 at 5.

After some back and forth, the officers eventually demanded that Baker and the two people traveling with her exit the car. *Compl.*, Dkt. 1-2 at 5; *M. Baker Aff.* ¶ 14, Dkt. 1-10 at 2. When they refused, the officers broke the front driver's and

---

[1] Because the Court grants the Government's motion to substitute as the Defendant, the Court directs the Clerk to reflect on the docket that the United States is the sole Defendant.

**MEMORANDUM DECISION AND ORDER - 2**

passenger's side windows, and Baker and her passengers got out. *Compl.*, Dkt. 1-2 at 6; *M. Baker Aff.* ¶ 30-31, Dkt. 1-10 at 2. The officers then arrested Baker and detained her. *Compl.*, Dkt. 1-2 at 6; *M. Baker Aff.* ¶ 37, Dkt. 1-10 at 3. They brought her to a magistrate five days later. *Compl.*, Dkt. 1-2 at 6; *M. Baker Aff.* ¶ 51, Dkt. 1-10 at 3.

*Procedure*

Baker sued in Idaho state court. *Compl.*, Dkt. 1-2. She alleged that the officers falsely imprisoned her, committed an aggravated assault against her, and failed to take her to a magistrate without unnecessary delay. *Compl.*, Dkt. 1-2 at 2; *see* Idaho Code §§ 18-905; 18-2901; 49-1406. The officers then removed the case to this Court, asserting that they were federal employees acting within the scope of their employment when the incident with Baker occurred. Dkt. 1; Dkt. 1-46. Thus, they argued, Baker could only sue for damages from injuries resulting from the incident under the Federal Tort Claims Act, which she could only do in federal court. Dkt. 1. In response, Baker moved to return the case to state court, arguing that she could sue the officers there because they were not federal law enforcement officers. Dkt. 7.

Next, the Government filed two motions. First, it moved to substitute itself as the Defendant, asserting that all claims under the Federal Tort Claims Act are

**MEMORANDUM DECISION AND ORDER - 3**

made exclusively against the Government. Dkt. 5; Dkt. 5-1 at 5-6. Second, it moved to dismiss the case for lack of subject matter jurisdiction. Dkt. 5; Dkt. 5-1 at 6-9. In moving to dismiss, the Government argued that the Court does not have subject matter jurisdiction because Baker did not comply with the procedural requirements of the Federal Tort Claims Act and because that Act does not allow her specific claims. Dkt. 5; Dkt. 5-1 at 6-9. Baker opposed the Government's motion to dismiss, arguing again that because the officers were not federal law enforcement officers, her case should return to state court and continue there. Dkt. 15.

Finally, Baker moved for a default judgment against the Government, arguing that it failed to defend against her lawsuit. Dkt. 17. The Government opposed this motion. Dkt. 18. In doing so, the Government pointed to its motion to dismiss and argued that this motion was a defense against Baker's suit. Dkt. 18.

## LEGAL STANDARD

*Federal Tort Claims Act Overview*

The United States has sovereign immunity: it cannot be sued in its own courts without its permission. *Gilbert v. DaGrossa*, 756 F.2d 1455, 1458 (9th Cir. 1985). It gave that permission, called a waiver, through Congress enacting the Federal Tort Claims Act; but it did so only for certain types of cases. 28 U.S.C.

**MEMORANDUM DECISION AND ORDER - 4**

§§ 1346, 2671-2680. One such type of case is a suit for personal injury caused by wrongful acts of federal employees that occur within the scope of that employment. 28 U.S.C. § 1346(b). Congress defined federal employees to include "officers or employees of any federal agency . . . and persons acting on behalf of a federal agency in an official capacity." 28 U.S.C. § 2671.

Later, Congress extended its waiver of sovereign immunity in the Federal Tort Claims Act to claims resulting from "the performance of functions . . . under a contract" authorized by the Indian Self-Determination and Education Assistance Act. *Dep't of Interior & Related Agencies Appropriation Act*, Pub.L. No. 101–512, Title III, § 314, 104 Stat.1915, 1959–60 (1990) (codified at 25 U.S.C. § 450f notes). This Indian Self-Determination Act created a system for tribes to administer programs or services to Indian populations that would otherwise be provided by the Government. *See Los Coyotes Band of Cahuilla & Cupeño Indians v. Jewell*, 729 F.3d 1025, 1033 (9th Cir. 2013). Under it, Congress provided that the employees of an Indian tribe, tribal organization, or Indian contractor are considered employees of the Bureau of Indian Affairs while they are acting "within the scope of their employment in carrying out the contract." *Dep't of Interior & Related Agencies Appropriation Act*, Pub. L. 101–512, § 314 (1990).

**MEMORANDUM DECISION AND ORDER - 5**

As to the "scope" of federal employment, Congress provided that the Attorney General, or a person she designates, can certify that a federal employee sued for wrongful conduct was acting within that scope when the incident occurred that triggered the claim. 28 U.S.C. § 2679(d)(1). This certification "is conclusive unless challenged." *See Green v. Hall*, 8 F.3d 695, 698 (9th Cir. 1993) (citing 28 U.S.C. § 2679(d)(1)-(4)). And it means the claim "shall be deemed an action against the United States" under the Federal Tort Claims Act, and the United States "shall be substituted as the party defendant." 28 U.S.C. § 2679(d)(1)-(2); *see also Walker v. Chugachmiut*, 46 Fed.Appx. 421, 424 (9th Cir. 2002).

Still, a claim under the Federal Tort Claims Act can only proceed if certain additional requirements are met. One of these requirements is that a claimant must present an administrative claim to the appropriate federal agency before filing an action in federal court. 28 U.S.C. § 2675(a). After doing so, the claimant must wait to begin a court action until the agency has either (1) made a final denial in writing, or (2) failed to act within six-months after the administrative claim is filed. *Id*. If the claimant does not comply with this requirement, the court will not have jurisdiction to consider the case. *Caton v. United States*, 495 F.2d 635, 638 (9th Cir. 1974).

**MEMORANDUM DECISION AND ORDER - 6**

## ANALYSIS

### A.   Baker's Motion to Remand to State Court

The Court will first address Baker's motion to return this case to state court. Dkt. 7. Under the Federal Tort Claims Act, a U.S. Attorney may certify that a defendant in a state court civil case was acting within the scope of his federal employment when the incident at the root of that case occurred. 28 U.S.C. § 2679(d)(2); 28 C.F.R. § 15.4. Once this certification is made, the state court case "shall be removed" to federal district court. 28 U.S.C. § 2679(d)(2). This certification is conclusive "for purposes of removal." *Osborn v. Haley,* 549 U.S. 225, 231 (2007); *accord* 28 U.S.C. § 2679(d)(2). The federal district court thus cannot send the case back, even if a plaintiff argues that the certification was improper. *See Osborn,* 549 U.S. at 231, 241–44 ("Congress gave district courts no authority to return cases to state courts on the ground that the . . . certification was unwarranted.").

Here, the Acting U.S. Attorney certified that the officers were acting within the scope of their federal employment when the incident happened that led to Baker's state-court lawsuit. Dkt. 1-46. The Government then removed the case to federal district court based on the Acting U.S. Attorney's certification. Dkt. 1. The certification is conclusive for removal purposes, so the Court cannot send it back to

**MEMORANDUM DECISION AND ORDER - 7**

state court. *See Osborn,* 549 U.S. at 231, 241–44. The Court therefore denies Baker's motion asking it to do so. *See* Dkt. 7.

### B.    The Government's Motion to Substitute

Next, the Court considers the Government's motion to substitute it as the Defendant in this case. Dkt. 5. Again, the Federal Tort Claims Act provides that the U.S. Attorney may certify that the defendant in a state-court case was acting within the scope of his federal employment when the incident happened that spawned the case. 28 U.S.C. § 2679(d)(2); 28 C.F.R. § 15.4. When he does so, and the case is removed to federal district court, it "shall be deemed an action against the United States," and the United States "shall be substituted as the party defendant." 28 U.S.C. § 2679(d)(1)-(2); *see also Walker v. Chugachmiut*, 46 Fed.Appx. 421, 424 (9th Cir. 2002). But, unlike in the removal context, substitution under this provision is not necessarily permanent. *See Osborn*, 549 U.S. at 242. That is, a plaintiff can argue that the certification is improper. And, if the court agrees, it can resubstitute the individual defendant. *Id*. That said, the certification is considered proper unless proven otherwise. *Billings v. United States,* 57 F.3d 797, 800 (9th Cir. 1995).

Baker does not challenge the certification here. Even interpreting her filings liberally, she only makes two arguments contesting whether her case should be in

MEMORANDUM DECISION AND ORDER - 8

federal court. *See Morrison v. Hall,* 261 F.3d 896, 899 n.2 (9th Cir. 2001). First, she argues that because the officers were not authorized to enforce federal law, they are not federal employees, and her case against them is not governed by the Federal Tort Claims Act and should not be in federal court. Dkt. 7 at 2; Dkt. 15 at 1; Dkt. 16 at 1. Second, she argues that she raised torture claims against the officers, which should not be blocked by sovereign immunity. Dkt. 7 at 2; Dkt. 16 at 1. Neither argument addresses the basis for the certification.

In that certification, the Acting U.S. Attorney found that the officers were acting within the scope of their employment and were executing a contract under the Indian Self-Determination Act when the incident with Baker occurred. Dkt. 1-46 at 1. Baker's first argument—that the officers were not authorized to enforce federal law—fails to challenge the certification because that certification was not premised on the officers having been authorized to enforce federal law. *See* Dkt. 7 at 2; Dkt. 1-46.

Baker's second argument—that she raised torture claims against the officers—similarly fails to state a challenge to the certification. *See* Dkt. 7 at 2; Dkt. 16 at 1. The certification was not based on the causes of action Baker chose to pursue in state court. *See* Dkt. 1-46. Rather, it was based on the Acting U.S. Attorney's review of Baker's complaint and his finding that "at the time of the

**MEMORANDUM DECISION AND ORDER - 9**

incident," the officers acted within the scope of their employment and were carrying out the contract under the Indian Self-Determination Act. Dkt. 1-46 at 1. Because Baker thus failed to challenge the certification, the certification is considered proper, and the Government is substituted as the Defendant in this case. 28 U.S.C. § 2679(d)(1)-(2); *see also Walker v. Chugachmiut*, 46 Fed.Appx. 421, 424 (9th Cir. 2002).

Despite this, the Court will assume for the sake of completeness that Baker's arguments did constitute a challenge to the certification. This assumption does not change the outcome.

When a plaintiff challenges a certification on the scope of federal employment, she has the burden to prove that it was more likely than not improper. *Billings,* 57 F.3d at 800. Whether an act was within the scope of employment is determined by applying the respondeat superior standard—that is, the standard used for holding an employer liable for the actions of its employee—in the state where the incident occurred that gave rise to the claim. *See Billings,* 57 F.3d at 800. Under that standard in Idaho, an act is within the scope of employment if it (1) is "the kind the employee is employed to perform, that (2) occurs substantially within the authorized limits of time and space, and (3) is actuated, at least in part, by a purpose to serve" the employer. *Teurlings v. Larson*, 320 P.3d 1224, 1233

**MEMORANDUM DECISION AND ORDER - 10**

(Idaho 2013) (internal quotation marks omitted). The employee's conduct may still fall within the scope of employment even if the employee's actions were "misguided," so long as the employee's intent was to "further the employer's business interests." *Nava v. Rivas-Del Toro*, 264 P.3d 960, 965 (Idaho 2011).

Interpreting Baker's arguments generously, the Court assumes she argues that because the officers allegedly assaulted and falsely imprisoned her, they exceeded the scope of their federal employment during the incident with her. Neither party nor the Court has identified a decision from an Idaho state court addressing whether the type of conduct the officers engaged in here was within the scope of their employment. But federal courts have found that even where law enforcement officers violate police protocols or use unauthorized excessive force, they are still acting within the scope of their employment when they are on duty and are purporting to act as law enforcement officers. *See Stucki by & through Stucki v. City of Pocatello*, 2017 WL 3841903, at *5 (D. Idaho Aug. 25, 2017); *Allender v. Scott*, 379 F.Supp.2d 1206, 1220 (D.N.M. 2005).

These decisions make sense. Otherwise, a law-enforcement employer could avoid liability for the acts of its officer by claiming that the officer was not acting within the scope of employment any time the officer did something wrong. *See Garcia v. United States*, 2010 WL 2977611, at *11, n.7 (D.N.M. June 15,

MEMORANDUM DECISION AND ORDER - 11

2010). And this logic is consistent with the Idaho state-law notion that an employee's "misguided" actions may still fall within the scope of employment, so long as the employee's intent was to "further the employer's business interests." *Nava*, 264 P.3d at 965. So, even when the Court assumes Baker contested the certification and interprets her argument liberally, she still fails to show that the certification was improper. The Court thus grants the Government's motion to substitute itself as the Defendant here.

### C. The Government's Motion to Dismiss for Lack of Subject Matter Jurisdiction

The Government also moved to dismiss this case for lack of subject matter jurisdiction. Dkt. 5, 5-1; *see* Fed. R. Civ. P. 12(b)(1). In general, federal courts have "limited jurisdiction" and are presumed to lack jurisdiction unless it "affirmatively appears" that they do. *Stock W., Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989). The plaintiff has the burden of establishing that jurisdiction exists. *Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994). And once a challenge to jurisdiction has been raised, the party opposing the motion to dismiss has the burden to establish that the court actually has subject matter jurisdiction. *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989).

The Government argues that there are multiple reasons why the Court should dismiss this case for lack of subject matter jurisdiction. Dkt. 5 at 2. The first of these reasons is that the Federal Tort Claims Act does not allow Baker to sue the officers for false imprisonment and assault—two of the three claims she originally raised in state court—because the officers were not certified as federal law enforcement officers when the incident with Baker occurred. Dkt. 5 at 2; Dkt. 5-1 at 6-7; 28 U.S.C. § 2680(h). Where, as here, the Government moves to dismiss for lack of subject matter jurisdiction because of an exception under this specific provision of the Federal Tort Claims Act—Section 2680(h)—it has the burden to prove that this exception applies. *Prescott v. U.S.*, 973 F.2d 696, 702 (9th Cir. 1992).

The United States, through the Federal Tort Claims Act, waived its sovereign immunity for torts committed by federal employees acting within the scope of their duties. *See* 28 U.S.C. § 1346(b); *United States v. Orleans*, 425 U.S. 807, 813 (1976). But there are exceptions to this waiver. For instance, the United States retains sovereign immunity regarding "any claim arising out of assault, battery, false imprisonment," or several other intentional torts. 28 U.S.C. § 2680(h).

**MEMORANDUM DECISION AND ORDER - 13**

That said, these intentional tort claims can be raised under the Federal Tort Claims Act if they relate to "acts or omissions of investigative or law enforcement officers of the United States Government." 28 U.S.C. § 2680(h). In this context, an "investigative or law enforcement officer" refers to "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." *Id*.

When addressing whether a tribal officer is a federal law enforcement officer for purposes of Section 2680(h), this Court has endorsed a two-part test. *See Washakie v. U.S.*, 2006 WL 2938854, at *4 (D. Idaho Oct. 13, 2006) (citing *United States v. Dry*, 235 F.3d 1249 (10th Cir. 2000)). Under this test, if (1) the tribal police officer was certified as a federal law enforcement officer and (2) acted under color of federal law at the time of the alleged intentional tort, then the tribal officer is considered a federal law enforcement officer, and the tort claim can be pursued under the Federal Tort Claims Act. *Washakie*, 2006 WL 2938854, at *4.

Here, as in *Washakie*, the dispositive question is the first one—whether the tribal officers were certified as federal law enforcement officers. *See Washakie*, 2006 WL 2938854, at *4. And, just as in *Washakie*, the answer here is no. *Id*. The Government here has furnished evidence showing how a tribal officer is certified as a federal law enforcement officer as well as evidence that the officers involved

**MEMORANDUM DECISION AND ORDER - 14**

here had not obtained that certification. Dkt. 5-2. Based on this evidence, the Government argues the officers were not federal law enforcement officers. Dkt. 5-1 at 6-7. Baker even agrees with the Government on this point. Dkt. 7 at 2. The Court thus concludes that the exception allowing intentional torts against federal law enforcement officers does not apply here. *See* 28 U.S.C. § 2680(h). As a result, the Court lacks subject matter jurisdiction over two of Baker's three claims—aggravated assault and false imprisonment—and must dismiss them. *See Compl.* Dkt. 1-2 at 2.

The Government further argues that the Court lacks subject matter jurisdiction over Baker's case because she failed to follow the proper procedures to sue under the Federal Tort Claims Act. Dkt. 5 at 2. Before suing under the Federal Tort Claims Act, the person bringing the lawsuit must exhaust their administrative remedies. This means that the person bringing the lawsuit must first present an administrative claim to the appropriate federal agency. 28 U.S.C. § 2675(a). That person must then wait to start the lawsuit in court until the agency has either: (1) made a final denial of the administrative claim in writing or (2) failed to act within six-months after the administrative claim is filed. *Id*. If the person bringing the Federal Tort Claims Act lawsuit does not comply with this requirement, the court does not have jurisdiction over the case. *Caton*, 495 F.2d at 638.

**MEMORANDUM DECISION AND ORDER - 15**

The Government argues that Baker has not stated that she complied with the requirement that she present her claims to the relevant agency, let alone that she waited for six months or until her administrative claim was denied to file her claims in court. Dkt. 5-1 at 8-9. Baker fails to respond to this argument, despite having filed several motions and responsive documents after the Government raised this issue. *See* Dkt. 7; Dkt. 15; Dkt. 16; Dkt. 17. She has thus failed to show that her case can proceed under the Federal Tort Claims Act. 28 U.S.C. § 2675(a). So, the Court must also dismiss Baker's third claim—unnecessary delay in bringing her to a magistrate—for failure to exhaust her administrative remedies.

Based on the reasoning above, the Court grants the Government's motion to dismiss. *See* Dkt. 5. Specifically, the Court dismisses Baker's first two claims—false imprisonment and aggravated assault—with prejudice because she cannot bring those claims under the Federal Tort Claims Act, which is the only avenue available to bring tort claims against federal employees for actions within the scope of their employment. The Court dismisses Baker's third claim—unnecessary delay in bringing her to a magistrate—without prejudice to her refiling or amending her complaint to reflect that she complied with the Federal Tort Claims Act's administrative exhaustion requirements. Because the Court has dismissed

**MEMORANDUM DECISION AND ORDER - 16**

each of Baker's claims, it declines at this point to consider the Government's alternative argument for dismissing Baker's unnecessary delay claim.

### D. Motion for Default Judgment

The last motion before the Court is Baker's request that the Court enter a default judgement against "the Defendant parties," who, she claims, have not responded to her complaint. Dkt. 17 at 1. Default judgments are generally disfavored. *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986). In any event, a default judgment can be entered against a party only where that party "has failed to plead or otherwise defend" against the action. Fed. R. Civ. P. 55(a). The "otherwise defend" language has been interpreted to include a timely motion to dismiss. *See McGee v. Milpitas Police Department*, 2025 WL 869305, at *1 (9th Cir. Mar. 20, 2025).

Here, the Defendant is the Government, as determined in this decision. *See supra* at 8-12. And though the Government has not filed an answer to Baker's complaint, it has filed a motion to dismiss. Dkt. 5. Thus, the Government has "otherwise defend[ed]" against Baker's lawsuit, so there are no grounds to issue a default judgment. Accordingly, the Court denies Baker's motion.

**ORDER**

**IT IS ORDERED that:**

1. Plaintiff's Motion to Remand to State Court (Dkt. 7) is **DENIED**.

2. The Government's Motion to Substitute (Dkt. 5) is **GRANTED**.

3. The Government's Motion to Dismiss (Dkt. 5) is **GRANTED**.

4. Plaintiff's Motion for Default Judgment (Dkt. 17) is **DENIED**.

DATED: August 4, 2025

B. Lynn Winmill
U.S. District Court Judge